J-S48036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAYREE REID | : | |
| | : | |
| Appellant | : | No. 373 EDA 2020 |

Appeal from the PCRA Order Entered November 13, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000144-2016

BEFORE:  KUNSELMAN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:　　　　　　**FILED NOVEMBER 18, 2020**

Kayree Reid (Appellant) appeals from the order entered in the Philadelphia County Court of Common Pleas, denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA),[1] seeking collateral relief from his jury convictions of third-degree murder, possession of an instrument of crime (PIC), recklessly endangering another person (REAP), and carrying a firearm without a license,[2] and his guilty plea to one count of possession of a firearm by person prohibited.[3]  Appellant argues trial counsel was ineffective for failing to request a slow motion/zoom analysis of surveillance video, which

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 2502(c), 907, 2705, 6106.

[3] 18 Pa.C.S. § 6105.

he maintains would have supported his claim of self-defense. For the reasons below, we affirm.

The relevant facts underlying this appeal were summarized by the PCRA court as follows:

> On November 10, 2015, at approximately 8:25 a.m., [Appellant] walked into the J&R Perez Grocery Store at 742 North 38th Street to purchase cigarettes. Inside, Mary Johnson operated the store's register as twin five-year-olds J.W. and Jo.W[.] and their twelve year old brother R.J. browsed the aisles. Near the front entrance sat the decedent, Maurice McDonald, looking at his cell phone. Upon seeing the decedent, [Appellant] drew a 10 mm Glock pistol and shot him four times, killing him.
>
> As [Appellant] fired upon the decedent, the decedent attempted to lunge away from the projectiles, and dove towards the children. As the decedent moved, [Appellant] continued firing in the direction of both the decedent and the children. One projectile struck the backpack J.W. wore, while another struck a shelf, inches from her head.
>
> At 8:50 a.m., Officer Tanya Wright responded to a radio call for a person with a gun at 742 North 38th Street, entered the J&R Perez Grocery, and discovered the unresponsive decedent crumpled on the floor with no weapons nearby. Officer Wright placed the decedent in a police vehicle to transfer him to the hospital, where he was pronounced dead.
>
> \* \* \*
>
> Jacqueline Davis of the Philadelphia Crime Scene Unit examined the crime scene and discovered three fired cartridge casings (FCCs) and multiple lead fragments. Davis never recovered the decedent's phone or any firearm in the grocery.
>
> \* \* \*
>
> Detective James Dunlap accessed the digital recorder located at the grocery store and recovered footage from ten active cameras. The recovered footage depicted the decedent sitting near the front entrance of the store as two children walked in.

- 2 -

Moments later, [Appellant] entered the store, looked at the decedent, drew a pistol, and fired four shots. As [Appellant] fired, the decedent moved towards and collided with the children as his cell phone flew across the grocery. **As the decedent lay dying, the video depicts several people walking into and out of the store, with one individual leaning down towards the decedent and possibly picking up an object.** Later, Detective Dunlap searched the decedent's Facebook page and identified [Appellant] by comparing the clothes he wore in the surveillance video to images posted by the decedent.

*   *   *

At trial, [Appellant] took the stand and testified that in the months leading up to the shooting, he and the decedent had been involved in a "beef" against each other, which culminated in the decedent shooting at [Appellant] on October 16, 2015. Although the decedent did not shoot [Appellant, Appellant] crashed his car trying to escape the shooting by vehicle, requiring hospitalization. On October 17, 2015 the decedent sent the [Appellant] a threatening text message, which indicated that the decedent originally attacked [Appellant] because [Appellant] started selling crack cocaine on Reno Street in Philadelphia:

> You bitch ass nigga, stop calling niggas, telling bitching and crying for ya life. I not going to stop [until] I drop you, pussy . . . and cut your young bull poop daddy off. I had that nigga bitching yesterday talking about he don't fuck with you and all. That nigga more pussy then you. I right at y'all, nigga. If you don't show ya face, trust me, nigga, I know how to get you out. Stand what the fuck you do. Go ahead, my nigga, put rocks on Reno. Just remember if it's ya block, you got to stand tall and die for that shit if you want the juice, pussy.

> And tell ya cousin that was looking for me to stand what he say. I'm going to make bull front page my word.

[Appellant] approached the decedent's cousin and his brother-in-law, Elliot Ruff, to mediate and possibly end the dispute. After speaking to [Appellant], Ruff approached the decedent [at least twice] and asked him to leave [Appellant] alone[, but] the decedent told him he was getting soft and should not hold [Appellant's] hand. After that conversation, Ruff told [Appellant] that talking to the decedent wasn't going to help and he would not be able to settle the issue. . . .

- 3 -

[Appellant] further testified that, on the morning of the shooting, he saw the decedent on his phone when he walked into the grocery store, and thought he may have been reaching for a gun as soon as the decedent saw him. [Appellant] claimed that he drew his gun and started firing out of fear. Immediately after the shooting, [Appellant] fled to New Jersey and ultimately Florida, where he was apprehended [and charged with the aforementioned offenses].

PCRA Ct. Op., 1/28/20, at 2-4 (record citation omitted and emphasis added).

Relevant to the issue raised herein, we note that the Commonwealth's compilation of the surveillance video of the shooting, which was played for the jury at trial, did not include the footage **after** the shooting. *See* N.T. PCRA H'rg, 11/13/19, at 14-15. During the Commonwealth's case-in-chief, Appellant's counsel, Brian McMonagle, Esquire, briefly cross-examined Detective Dunlap concerning the fact that the raw footage of video showed numerous people at or near the victim's body after the shooting, but before the police arrived. N.T., 1/24/17, at 71-72. At the PCRA hearing, Attorney McMonagle testified that he believed the raw surveillance video footage showed that a friend of the victim "pretended to render aid to him," but actually "removed what . . . looked like a weapon or what could have been a weapon from the decedent's body." N.T., PCRA H'rg, at 14 ("A guy was actually over him, and took something off of him that was shiny."). Attorney McMonagle made the strategic decision not to inform the Commonwealth of this omission before trial so that he could argue to the jury that the Commonwealth "were keeping things from [them,] specifically being the fact that [the decedent] did have a firearm on him." *Id.* at 15.

- 4 -

At trial, Attorney McMonagle then recalled Detective Dunlap during Appellant's case-in-chief to discuss, and play for the jury, the surveillance video after the shooting. Attorney McMonagle asked the detective about a male who appeared to enter the store at the same time as the decedent:

[Attorney McMonagle:] Did you notice anything about the male after the shooting and before police arriving?

[Detective Dunlap:] It's tough to see, but he is definitely down over the body [of the decedent].

[Attorney McMonagle:] Did it look to you, as an experienced detective, as if he took something from the body?

[Detective Dunlap:] When he is leaving, he is holding his waistband area. You cannot tell what, if anything, was taken, but he's definitely holding about his waistband area when he goes out the store.

N.T., 1/25/17, at 44-45. Attorney McMonagle then asked the detective to play that portion of the video both in real time, and slowed down, frame by frame. *See id.* at 49-51. The Commonwealth later called Barbara Hall to testify as a rebuttal witness. Ms. Hall testified she arrived at the store after the shooting, stayed with the decedent until the police arrived, and she did not see the decedent with any weapons. N.T., 1/26/17, at 31-32.

On January 27, 2017, a jury returned a verdict of guilty on the charges of third-degree murder, PIC, REAP, and carrying a firearm without a license. After the verdict was recorded, Appellant entered a guilty plea to the remaining charge of persons not to possess firearms. *See* N.T., 1/27/17, at 15-19. Thereafter, on April 24, 2017, the trial court sentenced Appellant to

an aggregate term of 17 to 34 years' imprisonment.[4]  This Court affirmed the judgment of sentence on direct appeal, and the Pennsylvania Supreme Court denied Appellant's petition for *allocatur* review.  **Commonwealth v. Reid**, 1501 EDA 2017 (Pa. Super. Aug. 21, 2018), *appeal denied*, 438 EAL 2018 (Pa. Feb. 15, 2019).

On May 6, 2019, Appellant filed a timely, *pro se* PCRA petition.  New counsel was appointed, and, on September 19, 2019, counsel filed an amended petition.  The PCRA court conducted an evidentiary hearing on November 13, 2019, and, that same day, entered an order dismissing Appellant's petition.  This timely appeal follows.[5]

Appellant presents one issue for our review:

Did the PCRA court err in concluding that trial counsel was not ineffective for failing to request a slow motion/zoom analysis of the Commonwealth's evidence where the evidence at the PCRA evidentiary hearing established that such an analysis would have revealed an individual leaning over the body of the decedent and removing a silver metallic object consistent with a firearm thereby bolstering [Appellant's] claim of self-defense?

Appellant's Brief at 3.

Our review of an order denying PCRA relief is well-established:

---

[4] The court imposed a sentence of 15 to 30 years on the charge of third-degree murder, and consecutive terms of one to two years on the charges of REAP and persons not to possess firearms.  Appellant received no further penalty on the remaining convictions.

[5] Appellant complied with the PCRA court's December 13, 2019, order and filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), on January 3, 2020.

[A]n appellate court considers whether the PCRA court's conclusions are supported by the record and free of legal error. Moreover, the factual findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given deference.

*Commonwealth v. Housman*, 226 A.3d 1249, 1260 (Pa. 2020) (citations omitted). Indeed, "[t]he PCRA court's credibility determinations are binding on this Court when they are supported by the record." *Commonwealth v. Hutchinson*, 25 A.3d 277, 284 (Pa. 2011) (citation omitted).

Additionally, to obtain relief under the PCRA based on a claim of ineffectiveness of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Pennsylvania, we have applied the *Strickland* test by requiring a petitioner to establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. Counsel is presumed to have rendered effective assistance, and, if a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis.

*Housman*, 226 A.3d at 1260–61.

In the present case, Appellant contends that trial counsel was ineffective for failing to request "to have a frame by frame analysis conducted of the portion of the video in which an individual bent over the decedent and removed something" or to have it analyzed in "slow motion or to zoom-in . . . ." Appellant's Brief at 10-11. He insists that the "subsequent slow motion/zoom-in analysis . . . clearly reveals that the individual removed a silver metallic object consistent with a firearm from the decedent's person."

*Id.* at 11. Appellant further maintains Attorney McMonagle had no reasonable basis for failing to request this analysis because his "trial strategy centered around the contention that the decedent had been armed and that [Appellant,] therefore, acted in self-defense." *Id.* Lastly, he argues he was "clearly prejudiced" by counsel's inaction because "had the jury seen actual evidence that the decedent was armed, the outcome might have been different." *Id.*

The PCRA court concluded Appellant is entitled to no relief. First, after viewing the enhanced video during the PCRA hearing, the court found that it was "inconclusive as to whether the individual removed a firearm from the decedent's body." PCRA Ct. Op. at 7 ("While the video clearly depicts the individual lifting the decedent's shirt and checking the decedent's body, this Court cannot, with any degree of certainty, state that the individual removed an object or whether that object was a firearm."). Further, the court noted that the video presented during the hearing was a "mere enhancement of the evidence presented at trial" so that the jury was "presented with the opportunity to consider" Appellant's theory. *Id.* at 7-8. Lastly, the court determined that the evidence at trial "clearly support[ed]" Appellant's third-degree murder conviction. *Id.* at 8.

We detect no basis to disagree. First, the PCRA court, which had the opportunity to view both the surveillance video at trial and the enhanced video during the PCRA hearing, determined that the enhanced video was still "inconclusive" as to whether the individual removed a firearm from the

decedent after the shooting. PCRA Ct. Op. at 7. Thus, on this basis alone, we could conclude Appellant's claim fails for lack of arguable merit.

Nevertheless, we also conclude Appellant cannot establish he was prejudiced by Attorney McMonagle's failure to present a slow motion/zoomed-in enhanced video to the jury. *See Houseman*, 226 A.3d at 1260-61. As the PCRA court explains in its opinion:

> Even if the decedent was armed at the time of the shooting, and that firearm was removed by an unidentified individual after the shooting, the surveillance footage clearly demonstrates that the decedent did not have time to remove or even reach for an object that may have been concealed in his waistband in the moments before [Appellant] shot him.

PCRA Ct. Op. at 8. Indeed, Appellant's own testimony confirms the court's finding. On direct examination at trial, Appellant described the events just prior to the shooting as follows:

> I walk in the store. . . . I seen two adults at the counter when I first opened the door. When I go to turn around, I see [the decedent] on his phone. I was shocked.
>
> I backed up. I took a step back, and **when it looked like he was reaching**, I got scared and I pulled the gun out and I start shooting in the front of the store.

N.T., 1/25/17, at 107-08 (emphasis added). Moreover, under cross-examination, Appellant confirmed he did not see the decedent "with a gun in his hand" before Appellant began shooting. *Id.* at 160. He simply believed the decedent made a motion like "he was reaching for a gun." *Id.* Thus, whether the decedent actually possessed a gun is irrelevant, as Appellant admitted he did not see any gun before he began shooting at the decedent.

Thus, any self-defense claim would necessarily fail because (1) Appellant "provoked the use of [deadly] force" by firing before the decedent retrieved a gun, and (2) Appellant could have retreated by immediately leaving the store when he saw the decedent. *See* 18 Pa.C.S. § 505(b)(2)(i)-(ii) (use of deadly force is not justifiable if the actor (i) "provoke[s] the use of force against him in the same encounter" or (ii) "knows he can avoid the necessity of using such force with complete safety by retreating").

Because we conclude Appellant has failed to establish Attorney McMonagle's ineffectiveness, we affirm the order denying PCRA relief.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 11/18/2020*

- 10 -